UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOSSIE BARNES,

        Plaintiff,                                    Hon. Wendell A. Miles

v.                                                    Case No. 5:06-CV-132

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 36 years of age at the time of the ALJ's decision. (Tr. 28, 30). She successfully completed high school and worked previously as a housekeeper, machine operator, and home healthcare aide. (Tr. 102-07, 191, 280).

Plaintiff applied for benefits on November 17, 2003, alleging that she had been disabled since January 19, 2003, due to "back problems." (Tr. 65-67, 89). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 31-87). On March 23, 2006, Plaintiff appeared before ALJ Janice Bruning, with testimony being offered by Plaintiff and vocational expert, Mandel Nelson. (Tr. 346-76). In a written decision dated April 18, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 17-30). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 8-11). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On December 11, 2002, Plaintiff was involved in an automobile accident in which she was wearing her seat belt. (Tr. 262). On January 2, 2003, Plaintiff participated in an MRI

examination of her lumbar spine, the results of which revealed a "probable" herniation at L4-5. (Tr. 208). The neural foramen and spinal canal, however, were "intact." *Id.*

On January 23, 2003, Plaintiff was examined by Dr. Hikmat Halasa. (Tr. 262). Plaintiff reported that she was experiencing "constant" low back pain which she rated as 8 on a scale of 1-10. Straight leg raising was positive on the right at 60 degrees. Plaintiff walked without difficulty and Babinski testing[1] was negative. *Id.* On February 20, 2003, Plaintiff participated in an EMG and nerve conduction study, the results of which were "normal" with no evidence of carpal tunnel syndrome or ulnar neuropathy. (Tr. 265).

X-rays of Plaintiff's thoracic spine, taken on April 5, 2003, were "negative." (Tr. 206). X-rays of Plaintiff's lumbar spine, taken the same day, were likewise "negative." (Tr. 207). On October 3, 2003, Plaintiff participated in a total body bone scan, the results of which were "negative." (Tr. 205).

On December 5, 2003, Plaintiff received a nerve root injection at L4-5. (Tr. 263). On February 3, 2004, Plaintiff reported that the injection "helped her" and that "she is not having as much pain as she had before." (Tr. 259).

On April 27, 2004, Plaintiff was examined by Dr. Donald Sheill. (Tr. 228-29). She reported that she was experiencing low back pain which radiated into her left leg. (Tr. 228). Plaintiff characterized her back pain as "much more significant" than her leg pain. She reported that her back pain ranged from 5-8 on a scale of 1-10. *Id.* The results of a physical examination were

---

[1] Babinski testing is designed to discern the presence of neurological damage in the brain and/or spinal cord. A positive Babinski reflex "indicates damage to the nerve paths connecting the spinal cord and the brain." *See* Babinski's Reflex, available at http://www.nlm.nih.gov/medlineplus/ency/article/003294.htm (last visited on June 22, 2007).

unremarkable. (Tr. 228-29). The doctor diagnosed Plaintiff with low back pain with "some" discomfort in her left lower extremity. (Tr. 229).

On February 11, 2005, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed a "right foraminal disc protrusion causing moderate neural foraminal narrowing at L4-5." (Tr. 239).

On March 8, 2005, Plaintiff was examined by Physician's Assistant, Joan Sullivan. (Tr. 249). Plaintiff reported that she was experiencing lower back pain and, to a lesser extent, leg pain. Plaintiff exhibited 5/5 strength and straight leg raising was negative. Plaintiff was instructed to participate in physical therapy. *Id.* Subsequent treatment notes indicate that while Plaintiff was instructed to participate in physical therapy for four weeks, she "actually only went for three weeks." (Tr. 248).

On June 8, 2005, Plaintiff was examined by Physician's Assistant, Kathi Beck. (Tr. 243-44). Plaintiff reported that she was experiencing lower back pain which radiated into her lower extremities. (Tr. 243). Plaintiff was in no acute distress and her mood was "stable." (Tr. 244). Plaintiff walked with a "normal" gait and was able to heel/toe walk without difficulty. She exhibited 5/5 strength in her lower extremities and Babinski testing was negative. Plaintiff was able to flex forward "to six inches above her toes." Plaintiff was diagnosed with low back pain, degenerative disc disease of the lumbar spine, and bilateral leg pain. *Id.*

On September 21, 2005, Plaintiff participated in a consultive examination conducted by Allison Bush, M.S., LLP, and Dennis Mulder, Ed.D. (Tr. 279-83). Plaintiff reported that she was

depressed. (Tr. 279). The results of a mental status examination were unremarkable. (Tr. 281-82). Plaintiff was diagnosed with depressive disorder and her GAF score was rated as 55-60.[2] (Tr. 282).

On October 17, 2005, Dr. Arthur Dundon completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 290-303). Determining that Plaintiff suffered from a depressive disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 291-99). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 300). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Dundon also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 285-86). Plaintiff's abilities were characterized as "moderately limited" in eight categories. With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.* The doctor concluded that Plaintiff "retains the capacity to do simple work on a sustained basis." (Tr. 287).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55-60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) lumbar disc disease and (2) depressive disorder. (Tr. 19). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-22). The ALJ determined that while Plaintiff was unable to perform her past

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 28-29). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) she can stand/walk about six hours during an 8-hour workday; (3) she can sit about six hours during an 8-hour workday; (4) she cannot climb ladders, ropes, or scaffolding; (5) she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps/stairs; (6) she cannot work at heights; and (7) she can perform only one and

two step tasks. (Tr. 22). The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Mandel Nelson.

The vocational expert testified that there existed approximately 10,700 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 368-69). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (evidence that there existed 2500 jobs "within the local region" represents a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (evidence that there existed 1350-1800 jobs "in the region" of the claimant's residence represents a significant number).

      a. The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. As noted above, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) she can stand/walk about six hours during an 8-hour workday; (3) she can sit about six hours during an 8-hour workday; (4) she cannot climb ladders, ropes, or scaffolding; (5) she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps/stairs; (6) she cannot work at heights; and (7) she can perform only one and two step tasks. Plaintiff asserts that the ALJ improperly disregarded two items in the record which refute his RFC determination.

Plaintiff first relies on the results of a Physical Work Performance Evaluation conducted on November 10, 2005. (Tr. 304-08). According to this evaluation, while Plaintiff is capable of performing work at the light exertional level, she "is incapable of sustaining the light level of work for an 8-hour day." (Tr. 305). Plaintiff asserts that this evidence establishes her disability. The ALJ, however, declined to accord "significant weight" to the results of this examination because "it relies strongly on the claimant's own behavior and not truly objective criteria." (Tr. 27). More importantly, as the examiner herself observed

> The client appeared tired when she c[a]me in for evaluation. She stated that she had stayed up all night doing laundry the night before her evaluation. The client often had her eyes closed when she was resting in a chair. Her overall performance may have been affected by her not getting much sleep the night before the test.

(Tr. 305).

As the ALJ correctly concluded, "this could have easily affected [Plaintiff's] performance" and, therefore, calls into question the validity of the evaluation. This conclusion is

further supported by a review of the objective medical evidence which does not support the conclusions of this evaluation. The Court further notes that none of Plaintiff's care providers have imposed on her limitations which are inconsistent with the ALJ's RFC determination.

Plaintiff counters the ALJ's decision to accord little weight to this evaluation by observing that she exhibited "self-limiting behavior" on only six percent of the tasks in the evaluation. (Tr. 304). Plaintiff asserts that this statistic demonstrates the validity of the results of the evaluation. According to the evaluation "self-limiting behavior means that the client *stopped* the task before a maximum effort was reached." *Id.* (emphasis added). While this definition includes circumstances in which an individual quits a particular task, it does not encompass a circumstance where an individual, rather than stopping a particular task, simply performs at a significantly diminished level due to an extreme lack of sleep. Plaintiff acknowledged that she "stayed up all night" the night before this evaluation. In such a circumstance, it is not unreasonable to call into doubt the results of the evaluation.

Plaintiff next faults the ALJ for improperly evaluating Dr. Dundon's opinion. As discussed above, the doctor completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 285-86). With respect to Plaintiff's ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," Dr. Dundon rated Plaintiff as "moderately limited." (Tr. 286). Plaintiff asserts that this observation establishes her disability. However, Plaintiff has overlooked Dr. Dundon's conclusion that while Plaintiff "would have difficulty with prolonged

11

concentration or detailed work tasks," she "retains the capacity to do simple work tasks on a sustained basis." (Tr. 287). In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### b. The ALJ Properly Assessed the Medical Evidence

On January 17, 2006, Plaintiff was examined by Dr. Virgilio Vasquez. (Tr. 333-34). The doctor diagnosed Plaintiff with a major depressive disorder with "some" generalized anxiety. (Tr. 334). Plaintiff's GAF score was rated as "about 43."[4] *Id.* On March 21, 2006, Plaintiff was examined by Dr. William Rowell. (Tr. 339-42). Dr. Rowell diagnosed Plaintiff with major depressive disorder with psychotic feature and rated her GAF score as 43. (Tr. 339). Plaintiff asserts that the ALJ improperly failed to afford controlling weight to the opinions of her treating physicians. Specifically, Plaintiff asserts that these GAF scores demonstrate that she is disabled.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 43 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

First, the record reveals that Dr. Vasquez examined Plaintiff only twice (within a one month time period) and that Dr. Rowell examined Plaintiff on only one occasion. Thus, as the ALJ correctly observed, their opinions (as expressed by their assignment of a GAF score) are not entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (noting that the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies *over a long period of time* will have a deeper insight into the [claimant's] medical condition") (emphasis added).

Moreover, as the Sixth Circuit has recognized, a GAF score "may help an ALJ assess mental RFC, but it is not raw medical data." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 n.7 (6th Cir., Feb. 9, 2006). Accordingly, the ALJ is not required "to put stock in a GAF score in the first place." *Id.* at 511 (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)).

Most importantly, however, Plaintiff's assertion that these GAF scores reveal that she is suffering "serious symptoms" or a "serious impairment" is not supported by the evidence of record. As discussed above, the results of an examination conducted by Allison Bush, M.S., LLP,

and Dennis Mulder, Ed.D. were unremarkable and revealed that Plaintiff's GAF score was 55-60. Plaintiff's treatment history likewise fails to support her allegations of disability. In sum, the ALJ properly evaluated the medical evidence in this matter and correctly declined to afford less than controlling weight to the opinions expressed by Dr. Vasquez and Dr. Rowell.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  July 6, 2007                                             /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge