UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOSSIE Y. BARNES,

    Plaintiff,

                                              Case No. 5:06-cv-132

v

                                              Hon. Wendell A. Miles

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

ORDER ON PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Plaintiff Flossie Y. Barnes brought this action challenging the decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability insurance benefits under Titles II of the Social Security Act. On July 6, 2007, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation ("R & R") recommending that the Commissioner's decision be affirmed. Plaintiff has filed a lengthy "objection" to the R & R, to which the Commissioner has responded.

The court, having made a *de novo* review upon the record of those portions of the R & R to which specific objection has been made, agrees with the conclusion reached by the Magistrate Judge that the Commissioner's decision must be affirmed.

**Discussion**

Although the court's standard of review for a magistrate judge's R & R is *de novo* when objections are made to the R & R, see 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b), the court's review of a final decision by the Commissioner of Social Security is limited to whether there is substantial evidence in the record to support the factual findings of the Administrative Law Judge ("ALJ"). See Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). In its review, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor make credibility determinations. Walters v. Commissioner of Social Security, 127 F.3d 525, 528 (6th Cir. 1997). "The decision of an ALJ is not subject to reversal even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273. The court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. Walters, 127 F.3d at 528. Here, the court finds that the correct legal standards were applied and that substantial evidence in the record supports the ALJ's decision.

Plaintiff generally objects that the court should not adopt the R & R but should instead reverse the decision of the Commissioner, because the ALJ improperly rejected significant evidence favorable to plaintiff. More specifically, plaintiff argues that the Magistrate Judge erred by not listing in her R & R all of the medical facts cited by plaintiff in her brief. According to plaintiff, omission of medical facts favorable to her position "has an apparent sanitizing affect [sic] on Plaintiff's disability." Plaintiff's Objection at 2. However, in this case, as in all cases

based on an administrative record, the record speaks for itself.[1] Although the parties may, in their briefs, point to those portions of the record which they believe are favorable to their respective positions, there is no authority which requires the court's written decision to recite each and every piece of evidence on which the parties rely. The Magistrate Judge's decision indicates that she applied the correct standard on review in this matter, and that she considered the record as a whole, as she was required to do. Plaintiff's objection that the R & R does not expressly repeat all facts cited in plaintiff's brief does not provide a basis for rejection of the Magistrate Judge's conclusion.

Plaintiff also objects that the Magistrate Judge failed to give the proper weight to the opinions expressed by two physicians, Drs. Vasquez and Rowell, regarding the extent of plaintiff's psychological impairment. Plaintiff argues that Drs. Vasquez and Rowell are both "treating physicians" who diagnosed plaintiff with a Global Assessment of Functioning ("GAF")

---

[1] Because the court's review is based on the administrative record, it is unclear why plaintiff has attached, to her objections, internet research regarding the use of magnetic resonance imaging ("MRI") in predicting discogenic pain. See Plaintiff's Exhibit 3. Plaintiff argues that this research indicates that "severe disc dehydration" is a reliable predictor of pain. Plaintiff's Objection at 4.
   Plaintiff does not indicate that this evidence was ever made a part of the administrative record. Only evidence in the record below can be considered when determining whether or not the Commissioner's decision was supported by substantial evidence, and new evidence cannot be considered for the first time in the district court simply because it has been appended to objections to a R & R. The only means to present new evidence is through a 42 U.S.C. § 405(g) remand to the Commissioner, which requires a showing that the new evidence is material and that there is good cause for the failure to incorporate it into the record in the prior proceeding. Plaintiff has not requested a remand. In any event, although plaintiff points to evidence in the record that she suffers from degenerative disc dehydration at L4-5, this evidence characterizes the dehydration as "mild." Tr. 239. Because plaintiff has not pointed to evidence that she suffers from "severe" disc dehydration, the internet research she has provided is not material to her condition.

score of 43, meaning – according to plaintiff – that she suffers from "serious symptoms or any serious impairment in social, occupational or school functioning." Plaintiff's Objection at 5. In her objections, plaintiff also attacks the greater weight given by both the ALJ and Magistrate Judge to the opinions of other professionals who evaluated plaintiff's mental condition.

In her R & R, the Magistrate Judge addressed plaintiff's arguments regarding Drs. Vasquez and Rowell, concluding that the opinions of these two professionals were not entitled to any special deference because Dr. Vasquez examined plaintiff only twice within a one-month time period, while Dr. Rowell examined plaintiff only once. The Magistrate Judge also applied the correct legal precedent, citing Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994), which recognizes that

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

Id. at 794. In Barker, the court held that the rationale of the treating physician doctrine did not apply to a clinical psychologist who had examined the plaintiff on only one occasion. Id. Such a report, according to the court, "was entitled to no special degree of deference." Id.

The Magistrate Judge was correct in concluding that the opinions of Drs. Vasquez and Rowell, as expressed by their assignment of a lower GAF score to plaintiff, were not entitled to

any special deference.² As best the court can determine from a review of the record, Dr. Vasquez, a psychiatrist, did see plaintiff only twice before the March 23, 2006 administrative hearing: once for an initial evaluation on January 17, 2006, and once for a follow-up visit on February 14, 2006. Tr. 331-334. In addition, the record contains only an initial assessment performed by Dr. Rowell, a psychologist, on March 21, 2006 – a mere two days before the administrative hearing. Tr. 335-342. The ALJ also correctly found, based on the record before her, that plaintiff had not gone to see Dr. Vasquez until three years after her alleged onset date, and had not yet established a treating relationship with him. Tr. 27. Under the circumstances, plaintiff's objection that the opinions of Drs. Vasquez and Rowell should have been given the deference due treating physicians is meritless.

Plaintiff alternatively argues that both the Magistrate Judge and ALJ improperly failed to evaluate the medical evidence regarding her mental impairments in accordance with 20 C.F.R. § 404.1527. This regulation provides that unless a treating source's opinion is given controlling weight, the following factors are considered in deciding the weight the Commissioner will give to any medical opinion: (1) examining relationship, with more weight given to the opinion of a source who has examined the claimant than to the opinion of a source who has not; (2) treatment relationship, with more weight given to opinions from treating sources; (3) supportability, with

---

²Plaintiff states that the ALJ erroneously identified Dr. Rowell as "Dr. Cowell." Plaintiff's Objection at 6 n.3. Although this is true, the error is insignificant. The ALJ had clearly reviewed the substance of this professional's report, as she references it in her written decision. Tr. 26-27. In addition, it is noted that plaintiff's own representative committed the same error in a letter requesting review by the Appeals Council. Tr. 344. It is also noted that Dr. Rowell's signature is at one point written so that his last name appears to begin with a "C" and not an "R." Tr. 339.

more weight given to a medical source who presents relevant evidence or better explanations to support an opinion, particularly medical signs and laboratory findings; (4) consistency, with more weight given to an opinion that is the more consistent an opinion is with the record as a whole; (5) specialization, with more weight generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist; and (6) other factors, such as any factors the claimant or others bring to the Commissioner's attention, or of which the Commissioner is aware, which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(1)-(6).

Plaintiff's argument that the Magistrate Judge and ALJ improperly failed to properly evaluate the medical evidence regarding her mental impairments in accordance with 20 C.F.R. § 404.1527 is based on their attributing more weight to the opinions of professionals other than Drs. Vasquez and Rowell. The ALJ accorded "great weight" to the opinion of Dr. Arthur Dundon, a State agency medical consultant who completed a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment on plaintiff based on a review of records dating from January 19, 2003 to May 1, 2005. Tr. 285. In the PRTF, Dr. Dundon noted the existence of little evidence of medications or treatment of plaintiff for her alleged mental health concerns before May, 2005. Tr. 302. Dr. Dundon also noted that it was plaintiff's alleged physical problems, and not her mental condition, which had caused her to stop working. Id. Dr. Dundon's conclusions – including his conclusion that plaintiff "retains the capacity to do simple work on a sustained basis" – have been summarized by the Magistrate Judge. R & R at 6.

Plaintiff argues that the Magistrate Judge relies too heavily on a consultative examination performed on September 21, 2005 by Allison Bush, M.S., L.L.P. and Dennis Mulder, Ed.D. At the examination, plaintiff claimed to have been taking the antidepressant Zoloft for 1½ months and participating in therapy for depression since May, 2005. Bush and Dr. Mulder diagnosed plaintiff with depressive disorder and rated her GAF as 55-60. Tr. 282. (As the Magistrate Judge noted, a GAF score of 55-60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." R & R at 6 n.2.) Their report concluded that plaintiff's potential for maintaining gainful employment was "fair pending any physical limitations imposed by her treating physician." Tr. 283.

Plaintiff's objections to the weight attributed to the opinions of Drs. Dundon, Mulder, and psychologist Bush are manifold. Specifically, plaintiff argues that (1) Dr. Dundon never examined plaintiff and had no treatment relationship with her; (2) Dr. Dundon's qualifications, such as whether he specializes in psychiatry, are not known; (3) Dr. Dundon did not review the opinions of Drs. Vasquez and Rowell; (4) Allison Bush is only a "limited" license psychologist and not a medical doctor; and (5) Dr. Mulder "apparently possesses a degree in education." Plaintiff's Objection at 7-8. In making these objections, plaintiff repeats her argument that more weight should have been given to Drs. Vasquez and Rowell, who – as noted above – did not even see plaintiff until years after her alleged mental disability began and need not be deemed "treating" physicians. In addition, plaintiff has not pointed to any evidence that Drs. Dundon and Mulder (who holds a doctoral degree) and psychologist Bush were not specialists in their respective fields. Finally, as the ALJ noted, the evidence did not support plaintiff's claims of

7

panic attacks, nor did it support the severity of her symptoms. Under the circumstances, both the ALJ and the Magistrate Judge properly assessed the medical evidence, which viewed as a whole does not support the conclusion that plaintiff is disabled based on a mental impairment.

Plaintiff also argues that the GAF scores assigned to her by Drs. Vasquez and Rowell indicate that she suffers from psychosis. She argues that this diagnosis is confirmed by her hearing testimony, during which plaintiff stated that she had "just started" taking Seroquel. Tr. 356. In her objections, plaintiff identifies Seroquel as "a strong anti-psychotic medication." Plaintiff's Objection at 6.[3] In making this argument, plaintiff appears to contend that her mental condition is more serious than found by the ALJ.

The record does not reveal that either Dr. Vasquez or Dr. Rowell diagnosed plaintiff as suffering from psychosis. Dr. Vasquez's diagnosis is listed as "Major Depressive Disorder, recurrent, with some Generalized Anxiety." Tr. 334. At the time of his diagnosis, Dr. Vasquez prescribed two medications, Lexapro and Lorezepam. Tr. 332. He reported that plaintiff "denies any perceptual distortion of a psychotic degree[.]" Tr. 334. Just over two months later, and a mere two days before her hearing before the ALJ, plaintiff reported during her initial evaluation

---

[3]In the pre-hearing statement submitted by her representative on March 8, 2006, plaintiff did not list Seroquel as one of her medications. Tr. 192. She did list Albuterol, Soma, Zoloft, Lorazepam, Lexapro, and ibuprofen. With the exception of the Albuterol and Soma, for which plaintiff indicated the frequencies of dosage, plaintiff did not list other required information for her medications, such as the dates prescribed, dosages, date filled, or number of refills. Id.

During her evaluation by Dr. Vasquez on January 17, 2006, plaintiff reported having taken no medications for the last two months. Tr. 333. However, at the March 23, 2006 hearing, plaintiff answered "Yep" when asked whether she was still taking Zoloft, but then reported that the medication "didn't help" and that she had started taking Seroquel. Tr. 356.

by Dr. Rowell that she was hearing sounds and seeing images. Tr. 338.[4] However, this was not her primary complaint, and Dr. Rowell's diagnosis was consistent with that of Dr. Vasquez – Major Depressive Episode, Recurrent – but with "psychotic feature." Tr. 339. Dr. Rowell did not identify this "psychotic feature" – presumably the voices and images plaintiff was allegedly seeing and hearing – as a problem for treatment. Id. Moreover, even assuming that plaintiff is correct that Seroquel can be used as an antipsychotic medication, the record contains no indication either that the drug is necessarily always used for this purpose, or that it was prescribed to plaintiff in order to treat a psychosis.

Plaintiff further argues that the GAF scores of 43 identified by Drs. Vasquez and Rowell must be entitled to greater weight because – once again, according to plaintiff's own internet research – a GAF of between 41 and 50 may indicate "**serious impairment in social, occupational, or school functioning** (*e.g.,* no friends, unable to keep a job)." Plaintiff's Exhibit 1. This was cited by the ALJ in her decision, in which she found that the low GAF could not be given much consideration or weight because the evidence did not support such a severity of plaintiff's symptoms overall. Tr. 26.[5] However, plaintiff argues that the GAF of 43 is consistent with her symptoms not only because she has not been employed but because "Plaintiff testified that she has no friends (Tr. 364-366)." Plaintiff's Objection at 9.

---

[4]During an evaluation performed for the State of Michigan Disability Determination Service on September 21, 2005, plaintiff also reported having auditory hallucinations, consisting of hearing someone calling her name. Tr. 281. She attributed it to taking Zoloft, and stated that she just tried to "block it out." Id.

[5]Dr. Rowell also appears to have questioned plaintiff's motivation in seeking treatment, for he noted, in a section titled "Weaknesses/Obstacles to Treatment," "motivation to change is [illegible] related." Tr. 342.

The argument that plaintiff has "no friends" is based on a misrepresentation of both plaintiff's testimony and the record. Plaintiff simply did not testify, at Tr. 364-366, that she has no friends. Instead, when asked about her daily activities by the ALJ, specifically whether she telephoned friends and relatives, plaintiff responded, "I call my mom." Tr. 366. This answer is not the same as saying she had no friends. Moreover, elsewhere in the record there are indications that plaintiff has indeed had friends. In a report which she completed in November, 2003, plaintiff listed Carla Mitchell as a "friend" who could be contacted for information about her condition. Tr. 88. In addition, in a third-party function report dated August 2, 2005, the person listed as completing the form is Juanda Davis, described as a "friend" of plaintiff. Tr. 125. Although the author of the report is at times somewhat unclear (the majority of the report refers to the "disabled person," or plaintiff, in the first person rather than in the third person), what is clear is that plaintiff was visiting with Davis "2 to 3 times a week," during which they would "sit and talk or might ride." Id. The report also states that plaintiff's "friend" sometimes helped with plaintiff's children. Tr. 126. Therefore, the court flatly rejects, as unsupported by the record, plaintiff's argument that the low GAF assigned to her by Drs. Vasquez and Rowell is consistent with her symptoms because plaintiff "has no friends."[6] This meritless argument therefore does not provide a basis for rejection of the Magistrate Judge's recommendation to affirm the Commissioner.

Plaintiff's final argument regarding her mental impairment is that the Magistrate Judge

---

[6]Plaintiff overemphasizes the importance of establishing a particular GAF score. "While a GAF score may be of considerable help to the ALJ in formulating the RFC [residual functional capacity], it is not essential to the RFC's accuracy." Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).

should have provided an interpretation of what it means to be "moderately limited" consistent with that of Bankston v. Commissioner of Social Security, 127 F. Supp.2d 820 (E.D. Mich. 2000). In Bankston, the court held that the use of the terms "Never," "Seldom," "Often," "Frequent," and "Constant" on a PRTF to measure the consistency of deficiencies of concentration, persistence, and pace should be interpreted respectively as 0 percent of the time, 25 percent of the time, 50 percent of the time, 75 percent of the time, and 100 percent of the time. 127 F. Supp.2d at 827. In this case, the PRTF completed by Dr. Dundon (who, as noted above, also completed a Mental Residual Functional Capacity Assessment) identifies plaintiff as having a "moderate" degree of limitation in maintaining concentration, persistence, or pace. Tr. 300.

The PRTF is used in evaluating the severity of mental impairments. The purpose of the PRTF is to assess whether the claimant's mental condition meets or equals one of the mental impairments listed in the appendix to Title 20. 20 C.F.R. § 404.1520a. However, as the ALJ correctly observed, the PRTF scale interpreted in Bankston was revised in July, 2001. The current scale rates the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) using a five-point scale consisting of the following terms: None, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ correctly concluded that she was not bound by Bankston. Tr. 28.

What plaintiff does not appear to comprehend is that the ALJ must still assess a claimant's residual functional capacity ("RFC") even if she does not meet the listings. 20 C.F.R. 404.1520a(d)(3). Therefore, the PRTF is not a substitute for the RFC determination. Here, plaintiff is apparently disappointed because she relied on Bankston in framing questions to the

11

vocational expert in terms of specific percentages. Tr. 372-373. However, because Bankston is not controlling, plaintiff's reliance on the case in her questioning of the vocational expert was misplaced.[7]

Plaintiff also objects to the Magistrate Judge's conclusion that the ALJ's determination of plaintiff's RFC is supported by substantial evidence. Specifically, plaintiff argues that the ALJ erred in "necessarily" rejecting the conclusions of licensed occupational therapist Stephanie Morse, who completed a Physical Work Performance Evaluation of plaintiff on November 10, 2005. Morse opined that plaintiff was "incapable of sustaining the Light level of work for an 8-hour day" and "Unable to complete the evaluation without added rest period(s)." Tr. 305. However, Morse also noted that plaintiff "appeared tired" when she reported for the evaluation, and plaintiff admitted that she had "stayed up all night doing laundry the night before her evaluation." Tr. 305. Morse therefore assessed that plaintiff's "overall performance may have been affected by her not getting much sleep the night before the test." Id. Plaintiff, however, argues that because Morse also concluded that plaintiff had "self-limited" on only six percent of the 18 tasks comprising the test, id. at 304, plaintiff's behavior and motivational factors did not

---

[7]Parties should be cautious in relying on lower court cases as controlling precedent. No published Sixth Circuit case has ever agreed with Bankston. Compare Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (expressing a preference for a "complete and accurate assessment" of a claimant's mental impairment which goes beyond a "simple frequency assessment" based on boxes checked on a rating scale) with Bartyzel v. Commissioner of Social Security, No. 01-4161, 74 Fed.App. 515, 528 (6th Cir. Aug. 26, 2003) (unpublished decision citing Bankston for the proposition that it is "proper, and perhaps more effective, for the questioner to attempt to quantify the Secretary's terminology in order to obtain a more precise opinion of the available jobs given a claimant's specific limitations").

affect the results.

The Magistrate Judge has already capably addressed this argument. R & R at 10-11. There is nothing to be added to the Magistrate Judge's well-supported conclusions, notwithstanding plaintiff's insistence that her staying up "all night doing laundry" should not be considered as an attempt to manipulate her overall performance on the test. Plaintiff's argument that the ALJ's assessment of her RFC is not supported by substantial evidence simply because the ALJ declined to give significant weight to the results of the testing by the occupational therapist is meritless.[8]

In a related vein, plaintiff argues that the ALJ's assessment of the occupational therapist's evaluation was inconsistent with the ALJ's obligation under Social Security Ruling ("SSR") 06-03p, which addresses opinion and other evidence from sources who are not "acceptable medical sources." Plaintiff contends that the court should reject the R & R because the Magistrate Judge failed to address this argument. However, as the Commissioner has noted, SSR 06-03p did not even become effective until August 9, 2006, well after the ALJ's decision was issued on April 18, 2006. In addition, as plaintiff's complaint alleges, the Appeals Council denied her request for review on June 7, 2006, thereby rendering final administrative action on

---

[8]Plaintiff argues that the fact that she was up all night before the test "cannot factually be the basis for an implication that [she] intended to stay up all night in order to manipulate the test results" because plaintiff testified at the administrative hearing that she "regularly goes to bed around 3:00 a.m. or 4:00 a.m." Plaintiff's Objection at 11. Therefore, plaintiff argues, "the fact that [she] had been up the night before the test was consistent with [her] normal conduct." Id.
The record does not support plaintiff's argument that it was "normal conduct" for her to stay up all night. Plaintiff fails to acknowledge her own testimony that although she goes to bed around 3 or 4 a.m., she "normally" awakes around 11, meaning that she ordinarily sleeps seven to eight hours. Tr. 366-367.

her claim.  Complaint at 3, ¶ 8.  Therefore, her claim was no longer being adjudicated by the Commissioner after that date.  Nothing in SSR 06-03p indicates that it applies retroactively.  See Cruse v. Commissioner of Social Security, No. 06-5772, 2007 WL 2752888,  (6th Cir. Sept. 24, 2007) (declining to hold that SSR 06-03P, which was not implemented until August 9, 2006, applied to final decision issued by Appeals Council on  December 4, 2004).[9]

      The ALJ's questioning of the vocational expert did take into account plaintiff's functional restrictions as determined by the ALJ, who concluded that plaintiff – who provided the subjective information used to evaluate her mental capacity – was "not generally credible." Tr. 28.   "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."  Casey v. Secretary of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993); see also Jones v. Commissioner of Social Security, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of the claimant when making a determination of disability").[10]  The ALJ gave "great weight" to

---

[9]As the Commissioner has argued, even if SSR 06-03p had applied, it does not change the greater weight given to the opinions of "acceptable medical sources."   In addition, the Magistrate Judge noted that none of plaintiff's care providers – including her primary physician and treating pain specialist – have imposed limitations on her which are inconsistent with the ALJ"s RFC determination.

[10]The ALJ's conclusion that plaintiff "lacks credibility" was buttressed by her observation that "[a]t times [plaintiff] would not look at the [ALJ] when testifying and was evasive."  Id.  This credibility determination is supported by inconsistencies in plaintiff's hearing testimony.  One especially notable instance occurred when plaintiff at first denied driving an automobile and then reversed herself when it became apparent that the ALJ – who was obviously familiar with the medical evidence – noted that plaintiff had been driving and asked her when she had stopped.  Tr. 364.   In response to the ALJ's questioning, plaintiff also twice denied
(continued...)

the opinion of Dr. Dundon, who concluded that although plaintiff would have "difficulty with prolonged concentration or detailed work tasks" and "difficulty with large groups" or "working with the public," she could "follow one/two step directions," interact appropriately, and "do simple work tasks on a sustained basis." Tr. 287.  Therefore, the court concludes that the Magistrate Judge was correct in determining that the ALJ's RFC determination is supported by substantial evidence.

## **Conclusion**

Plaintiff's objections are overruled.  The court adopts the R & R as the decision of the court.  The court will enter judgment affirming the decision of the Commissioner.

Entered this 4th day of October, 2007.

    /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge

---

[10](...continued)
having completed high school, Tr. 349, even though the record indicates that plaintiff completed the 12th grade and graduated from Muskegon High School.  Tr. 152, 191, 280.  When such basic inconsistencies are so readily apparent, it is particularly difficult to second-guess the credibility determination made by the ALJ.  See Howard v. Commissioner of Social Security, 276 F.3d 235, 242 (6th Cir. 2002) (claimant's inconsistent testimony provided a reasonable basis for ALJ's unfavorable credibility determination).